Ruffin, C. J.
 

 One Benjamin Burgin was indebted to the present plaintiffj in the sum of $3620 051, by bond, bearing date the 16th of August, 1837, and due one year thereafter, and in the further sum of $159,- by bond, bearing date the 2d of December, 1837, and due one year thereafter ; and, by way of securing the same, executed oh the 4th day of December, 1837 a deed of trust to the plaintiff,. whereby he conveyed to him several slaves* and other real and personal property, including debts due by bond and account, to a considerable amount, at least nominally, arid about one hundred bushels of corrí, and aísd some articles of household furniture. The deed expresses the following conditions or trusts: That if Burgin, the debtor, should pay those debts as they fell due, the deed should be void; but if payment should not be so made, then that the plaintiff might enter and take possession of the property, and “ after advertising the same at five public places in the County of Burke, shall sell the same at private sale, to the highest bidder, on a credit of, &c., the purchasers giving bond and approved security; and out of the proceeds of such sale, shall pay the said debts, and interest thereon, and all reasonable charges in executing the trusts ;, and the overplus, if any, pay to the said Benja
 
 *455
 
 min Burgin, or to his order; and it is covenanted and vided, that until there is a breach of the foregoing provisoes,' so as to entitle the bargainee and trustee to enter, the said Benjamin is to remain in the quiet enjoyment of the premises.” After the execution and registration of the deed,
 
 ¡¡.fieri facias issued
 
 on a judgment rendered by a justice oí the peace, against the said Benjamin Burgin, the debtor, for a third person, and was delivered to the defendant, a constable, who proceeded under it to take from the plaintiff's possion, and sell one of the slaves conveyed by the deed. Thereupon, the plaintiffbrought this action of trover, on the 1st day of May, 1838, and issue was joined on the plea of not guilty. On the trial, the defendant’s counsel contended, that an action of trover would not lie against a constable for seizing goods under due legal process
 
 ¿
 
 but the Court held otherwise in this case.
 

 It was then alleged on the part of the defendant, that the' deed to the plaintiff was made to hinder and defraud other creditors of the debtor, Benjamin Burgin, and was therefore void. To establish the same, the defendant offered to prove,that before the execution of the deed to the plaintiff, the said Benjamin had,in South Carolina, executed a deed of trust for sundry articles of property, including the slave in dispute, in this action, to certain creditors of the said Benjamin, there' resident, for the purpose of securing their' debts; and that,with knowledge of that deed, but before the same was registered, the plaintiff- procured the deed to himself, to be executed and registered, with intent to get the preference for himself ; but the Court refused to receive such proof.
 

 Evidence was then given,' that B. Burgin, the debtor, was’ much involved in debt, and indeed, insolvent at the time of executing the deed to the plaintiff; and that the property conveyed in that deed was much more than sufficient to satisfy the plaintiff’s debts, though from a considerable part of it, and particularly from the debts assigned, but a small sum was realized. It was also proved, that Benjamin Burgin,the debtor, continued in possession of' the estates conveyed, after the execution of the deed, and that he consumed the corn, and still retained the household furniture; and that the
 
 *456
 
 plaintiff did not make any sale upon the failure to pay the debt, which fell due in August, 1838. But it further appeared, that the plaintiff proceeded to sell as soon after the debt fell due in December, 1838, as he could, and did not raise money enough therefrom to satisfy his debts, and that he demanded from Benjamin Burgin the com and furniture, and that, upon the refusal of Benjamin to deliver them, the plaintiff brought an action against him therefor.
 

 Upon this case, the counsel for the defendant moved the Court to instruct the jury, that the deed to the plaintiff was void, because it provided that the plaintiff might make a private sale ; and because of the provision that any surplus, after satisfying the debts to the plaintiff, should be paid by him to Benjamin Burgin; and because a larger amount of property was conveyed by the deed than was sufficient to pay the debts to the present plaintiff, which, therefore, the parties intended to cover and protect from the other creditors of the debtor, for the benefit of himself and his family.
 

 And on the part of the defendant, the Court was also moved to instruct the jury, that if the deed were
 
 bona fide,
 
 and valid at its execution, yet it became fraudulent and void by the conduct of the plaintiff, in afterwards permitting the debtor to consume the corn and retain the furniture, and in not selling the effects as soon as the first debt became due.
 

 The Court held, that none of the circumstances relied on by the defendant, amounted to fraud,
 
 per se,
 
 so as to enable the Court to pronounce the deed fraudulent and void, for any matter apparent thereon. And the Court instructed the jury, that if the deed was executed
 
 bona fide, to
 
 secure honest debts to the plaintiff, the subsequent conduct of the parties, as stated in the evidence, would not a
 
 void
 
 the deed of itself; but that such conduct was evidence, from which the jury might infer a fraudulent design, originally, in the execution of the deed.- And the Court further instructed the jury, that if the deed were executed for the sole purpose of securing the debts to the plaintiff, and without any intention of hindering or defrauding other creditors of the maker of the deed, then it was good, notwithstanding more property was conveyed than was necessary to satisfy those debts ; but if
 
 the
 
 
 *457
 
 pai ties had an intent to cover any of the property oí the debtor, for the benefit of the debtor or his family, then intent was fraudulent, and made the deed void ; and, to ascertain whether such an intent existed or not, the jury might take into consideration the value of the property conveyed, and the amount of the debts to the plaintiff, and that the evidence would be stronger or weaker, according to the amount and nature of the property, and the greater or less probability of its being made available to the satisfaction of the debts.
 

 The jury found a verdict for the plaintiff, and from the judgment thereon, the defendant appealed.
 

 We are unable to see any ground for disturbing the judgment of the Superior Court. It is possible the jury may have erred in the conclusions drawn by them, though nothing appears to satisfy us that even that is so. But certainly the Court did not, in our opinion, err, to the prejudice of the defendant, in the propositions stated to the jury as the law of the case. In the first place, we will observe, that all the evidence respecting a prior deed of trust, was irrelevant and properly excluded. The defendant did not connect himself with the persons intended to be secured thereby, and could not complain that they had been defeated. The defendant represents a general creditor of the insolvent, and he must shew something in the deed to the plaintiff, which the law deems fraudulent against such a creditor. But the imputed fraud, which he offered to prove, was not a fraud againstpersons standing in the relation of general creditors, but in that of creditors claimingunderthe security of a prior imperfect deed; with which the defendant and the creditor, for whom he acted, had nothing to do. An answer equally decisive is, that even the creditors mentioned in that deed could not impeach the deed to the plaintiff on that ground. The statutes expressly declare, that a mortgage or deed of trust shall be void, as against a purchaser or creditor of the person making the deed, unless it be registered within the time prescribed
 
 ;
 
 and moreover, that it shall have no operation until it be registered. At all events, then, the plaintiff cannot be regarded as guilty of a fraud on the persons claiming under the prior
 
 *458
 
 deed, at least in a Court of law ; since, under that deed, no r^lls legacy arose.
 

 There is no doubt that the owner of property may maintajn^ agajnst; a sheriff, any action for detaining or converting his property, taken under an execution against a third person, which he could have, if the taking was without process. Being a stranger to the process, it has no operation against the plaintiff. In another case arising on this very deed, the Court held that the action of trover would lie against the constable and the plaintiff in the execution, under which another negro was seized and temporarily kept.
 
 Burgin
 
 v.
 
 Burgin,
 
 1 Iredell, 160.
 

 We will now advert to the other grounds for imputing fraud to the plaintiff. One is, that the deed authorises a private sale. But, at most, that would be only evidence of fraud, to be left to the jury, and not fraud
 
 per se,
 
 as here contended. A higher price may sometimes be got by private contract, than by auction ; and there is no allegation that there was here any design to sacrifice the property, or that it was not in fact fairly sold for proper prices. But other provisions of the instrument plainly shetv, that the word “private” was inserted by the misprision of the writer, for the sale is directed to be alter public notice, and to the highest bidder. It is obvious, therefore, that a public sale was intended. If so} the deed could not be deemed fraudulent, without giving that character to a mere mistake.
 

 The other directions of his Honor, in reference to the reservation of the surplus to Burgin, the debtor, after payment of the plaintiff’s debts, and to the supposed disparity between those debts and the value of the property and debts assigned, we deem unexceptionable. They have the direct sanction of this Court, in
 
 Moore
 
 v.
 
 Collins,
 
 when first here, 3 Dev. 126 ; and ns far as these questions were involved, the opinion of the Court was unanimous. The express provision, that such part of the estates conveyed, or their proceeds, as may not be necessary to discharge the debts, should result to the maker of the deed, or be paid to him, can do no harm; for it is merely a work of supererogationffo insert it, and the
 
 *459
 
 deed means the same thing, whether it have or have pot that clause. So, with respect to the amount of property, it' must be remembered, that, as it cannot be ascertained what accidents may occur to diminish the perishable part of it, or lessen its value, or how old accounts will turn out upon collection, it is usual to convey more in mortgage or trust, by way of security, than it may be supposed will precisely meet the demand. It is, indeed, fair, that the creditor should have ample security, and, therefore, it furnishes no conclusive argument of a dishonest purpose, if the deed conveys property of value fully to cover the debts, under any and all contingences that may be expected, or reasonably apprehended.— But it is equally true, that, underpretence of securing a debt, the debtor may convey much more than necessary for that purpose, and really, for the purpose of securing the use to himself, and baffling his other creditors. Hence, the question is one of intention; and, as such, it was in this case properly left to the jury, with the requisite explanations of the grounds of presumption in support of, and against the deed. The jury found that there was no intention to cover the property from the debtor’s other creditors, but that the sole intention was to secure the debts to the plaintiff. How they could have found otherwise, we should be at a loss to say ; since the case states, that however much the property was at first supposed to exceed the debts, it has turned out in fact that, either from seizures by other creditors, or the insolvency of the debtors, the plaintiff has been unable as yet to get his debts.
 

 With respect to the delay in making the sale, and the circumstances, that the plaintiif has not yet sold the furniture, and cannot sell the corn, which has been consumed, it is to be remarked, that the present defendant sets up those objections with a bad grace, since he took the slave in the Spring of 1838, and this action was brought on the first of May, of that year, being four or five months before the plaintiff could have sold. But, clearly, the delay to sell, and the other circumstances subsequently occurring, cannot destroy the deed, if
 
 bona fide
 
 at first, unless the delay and the uses had of the property by the debtor, were such as to give him
 
 *460
 
 false credit, and hold him out to the world as the owner of ¡¿g pr0perty; nothing like which is pretended.
 

 Upon the whole, the case was fairly submitted to the jury upon every point, on which it was material that body should pronounce on the intention of the parties ; and we think the judgment must be affirmed.
 

 Per Curiam, Judgment affirmed.